IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LATISHA BOLDEN, as mother and next friend of T.B., a minor, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACT. NO. 3:20-cv-390-ECM ) [WO] |
| ARNETTA MOORE, *et al.*, | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

On June 10, 2020, Nautilus Insurance Company ("Nautilus") removed this action to this Court from the Circuit Court of Macon County, Alabama, based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 & 1441. Now pending before the Court is Nautilus's motion to realign and sever or dismiss certain claims and parties (doc. 4) and Latisha Bolden's ("Plaintiff" or "Bolden") motion to remand and for briefing schedule (doc. 11). For the reasons that follow, Nautilus's motion is due to be GRANTED, and the Plaintiff's motion is due to be DENIED.

### II. STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 911 (11th Cir. 2014) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A defendant may remove an action initially filed in state court to federal court if the action is one over which the federal court has original jurisdiction. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). When jurisdiction turns on removal, "federal courts are directed to construe removal statutes strictly," and "all doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). "[T]he removing party bears the burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998).

### III.  FACTS AND PROCEDURAL HISTORY[1]

In 2016, the Plaintiff, on behalf of her minor son T.B., sued Defendants Arnetta Moore and Dawn Smith-Tucker, T.B.'s teachers at D.C. Wolfe Elementary School, in the Circuit Court of Macon County, Alabama, Case Number CV-2016-900099. The complaint alleges that T.B. was assaulted by Smith-Tucker at school on one occasion and by Moore at school on another occasion. The Plaintiff asserts six state law tort claims against the Defendants: assault; battery; outrage; intentional, wanton, reckless, and/or negligent infliction of emotional distress; negligence; and wantonness.

At the time of the alleged assaults, Moore had liability insurance coverage under a policy issued by Nautilus. After Moore was served, Nautilus agreed to defend Moore against the Plaintiff's claims under a reservation of rights. While the case was pending,

---

[1] The following facts are taken from the Plaintiff's original complaint (doc. 1-1), the Plaintiff's second amended complaint (doc. 1-3), and Nautilus's Notice of Removal (doc. 1), and the Court makes no determination as to their veracity.

Moore moved from Alabama to Michigan. Thereafter, Moore ceased participating in the litigation, including violating multiple court orders to appear for a deposition. Eventually, Nautilus sent a letter to Moore advising that her refusal to appear for a deposition was a breach of her cooperation obligations under the insurance policy. After Moore did not respond to the letter, counsel for Nautilus moved to withdraw as counsel for Moore.

On March 13, 2020, the state court entered an Order of Default Judgment Awarding Damages against Moore and in favor of the Plaintiff. (Doc. 1-15). The court explained that Moore "ha[d] repeatedly failed and refused to appear for deposition testimony in direct contempt of multiple Orders of this Court, leaving the Court with no recourse other than to enter a default judgment against her." (*Id.* at 1). The Order awards the Plaintiff a $2 million judgment against Moore, representing $1.5 million in compensatory damages and $500,000 in punitive damages. (*Id.* at 2–3).

On May 5, 2020, the Plaintiff filed a Second Amended Complaint purporting to add a garnishment claim pursuant to Alabama Code §§ 27-23-1, -2, against Nautilus and the Alabama Education Association ("AEA") (Count 7). (Doc. 1-3). The Plaintiff asserts that the AEA is an "Alabama non-profit corporation and a participating unit and certificate holder of insurance for qualifying teachers throughout the State of Alabama, including [Moore]." (*Id.* at 2, para. 4). The Plaintiff further alleges that at the time of the alleged assault, Moore was a member of the AEA, and the AEA "insured Arnetta Moore." (*Id.* at 9, paras. 36–37). The Plaintiff contends that she "is entitled to proceed against Arnetta Moore and her insurers, Defendants Alabama Education Association and Nautilus

Insurance Company, to reach and apply the insurance proceeds" to satisfy the damages award. (*Id.* at 10, para. 40).

Nautilus was served with the Second Amended Complaint on May 11, 2020. On June 10, 2020, Nautilus filed its Notice of Removal, asserting diversity jurisdiction.[2] (Doc. 1). Nautilus acknowledges that the AEA is not completely diverse from the Plaintiff. However, Nautilus asserts that this Court should disregard the AEA's citizenship because the AEA was fraudulently joined. On June 17, 2020, Nautilus filed an answer and counterclaim against the Plaintiff and Moore. In its counterclaim, Nautilus seeks a declaratory judgment that it does not owe coverage to Moore for the judgment obtained by the Plaintiff due to Moore's alleged failure to cooperate in the litigation, and also because the claims against Moore are excluded from coverage under the applicable policy.

On June 18, 2020, Nautilus filed a motion to realign and sever or dismiss certain claims and parties. (Doc. 4). On June 26, 2020, the Plaintiff filed a motion to remand and

---

[2] "[I]f the case stated by the initial pleading is not removable," the defendant may file a notice of removal within thirty days after receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). For removals based on diversity, however, § 1446(c)(1) forbids removal "more than 1 year after the commencement of the action," unless the court finds that the plaintiff acted in bad faith to prevent removal. Nonetheless, Nautilus argues that its removal was timely. It contends that because the "garnishment action is a separate and independent action for purposes of removal," neither the original complaint nor any subsequent filing in state court prior to the Second Amended Complaint initiated the one-year timeframe in which it had to remove. (Doc. 1 at 9). But the Plaintiff has not argued that this case should be remanded on the grounds that the removal was untimely. "The untimeliness of a removal is a procedural, instead of a jurisdictional, defect." *In re Uniroyal Goodrich Tire Co.*, 104 F.3d 322, 324 (11th Cir. 1997) (per curiam). "A motion to remand . . . on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c). Because the Plaintiff did not challenge the timeliness of the removal within thirty days after Nautilus filed its Notice of Removal, the Plaintiff has abandoned this issue. Thus, the Court need not decide whether the removal was timely.

4

for briefing schedule. (Doc. 11). On July 2, 2020, the Court entered a briefing schedule on the Plaintiff's motion to remand. (Doc. 12).

## IV. DISCUSSION

In its motion (doc. 4), Nautilus requests that the Court: (1) sever and remand the claims against Smith-Tucker; (2) realign the parties in the garnishment action such that Moore is considered a plaintiff rather than a defendant; and (3) dismiss the garnishment claim against the AEA based on fraudulent joinder. In her motion to remand (doc. 11), the Plaintiff argues that the AEA was not fraudulently joined, and so the parties are not completely diverse. Therefore, the Plaintiff contends that the Court lacks subject matter jurisdiction and thus this entire action should be remanded to the Circuit Court of Macon County.

Nautilus argues that this Court has diversity jurisdiction over the garnishment action (Count 7).[3] For the Court to exercise diversity jurisdiction, Nautilus must show that the amount in controversy exceeds $75,000, exclusive of interest and costs; and that the action is between "citizens of different States." 28 U.S.C. § 1332(a)(1). Because the garnishment action seeks to collect a $2 million judgment, the Court concludes that the amount-in-controversy requirement is met. The Plaintiff is an Alabama citizen,[4] so for diversity of citizenship to exist, no Defendant may be an Alabama citizen. Moore is a Michigan citizen,

---

[3] Counts 1–6 of the Second Amended Complaint contain state law claims between Alabama citizens—the Plaintiff and Smith-Tucker. Therefore, neither federal question jurisdiction nor diversity jurisdiction exists over the claims. *See* 28 U.S.C. §§ 1331–32.

[4] The Plaintiff, as the legal representative of T.B., is "deemed to be a citizen only of the same State as the infant." *Id.* § 1332(c)(2). T.B. is, and was at all material times, an Alabama citizen. (Doc. 21).

Nautilus is an Arizona citizen,[5] and the AEA is an Alabama citizen. Thus, for the Court to have diversity jurisdiction, Nautilus must show that the AEA was fraudulently joined.

### A. Fraudulent Joinder

Nautilus argues that the AEA was fraudulently joined because Alabama Code § 27-23-2 allows a garnishment action to be brought against only the insurer and the judgment debtor, and contrary to the Plaintiff's arguments, the AEA is not an insurer.[6] Thus, according to Nautilus, the AEA's citizenship should not be considered in determining the existence of diversity jurisdiction, and the claim against the AEA should be dismissed.

"When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). In such circumstances, "[t]he plaintiff is said to have effectuated a 'fraudulent joinder,' and a federal court may appropriately assert its removal diversity jurisdiction over the case." *Id.* (citation omitted). A defendant can succeed on its claim that a co-defendant was fraudulently joined by demonstrating that there is no possibility the plaintiff can state a cause of action against the non-diverse defendant. *Id.* "The defendant must make such a showing by clear and convincing evidence." *Id.*

---

[5] Nautilus, a corporation, is "deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Nautilus is incorporated in Arizona, and its principal place of business is in Arizona. (Doc. 1-14 at 6, para. 20).

[6] The Plaintiff does not argue that the AEA is a judgment debtor.

6

A claim of fraudulent joinder can be defeated by the plaintiff's showing that the claim has "a possibility of stating a valid cause of action." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1333 (11th Cir. 2011) (per curiam) (quoting *Triggs*, 154 F.3d at 1287).  The Eleventh Circuit has explained that "[i]n considering *possible* state law claims, possible must mean more than such a possibility that a designated residence can be hit by a meteor tonight.  That is possible.  Surely, as in other instances, reason and common sense have some role." *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) (citation omitted).  In other words, "[t]he potential for legal liability 'must be reasonable, not merely theoretical.'" *Id.* (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).  The fraudulent joinder determination "must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Id.* at 1322 (emphasis omitted) (citation omitted).  "The proceeding appropriate 'for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b).'" *Id.* at 1322–23 (citation omitted).  Thus, "the district court must 'resolve all questions of fact . . . in favor of the plaintiff.'  But there must be some question of fact before the district court can resolve that fact in the plaintiff's favor." *Id.* at 1323 (citation omitted).

> Alabama's garnishment statute states in relevant part:
>
> Upon the recovery of a final judgment against any person . . . for loss or damage on account of bodily injury . . . , if the defendant in such action was insured against the loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money provided for in the contract of insurance between the insurer and the defendant applied

7

> to the satisfaction of the judgment, and if the judgment is not satisfied within 30 days after the date when it is entered, the *judgment creditor may proceed against the defendant and the insurer to reach and apply the insurance money to the satisfaction of the judgment.*

Ala. Code § 27-23-2 (emphasis added).  On its face, the garnishment statute allows the judgment creditor—here, the Plaintiff—to proceed against the defendant judgment debtor (Moore) and the insurer, and no other person.  Nautilus argues that the AEA is not an insurer, and therefore there is no possibility that the Plaintiff can state a valid of action against the AEA, and thus the AEA was fraudulently joined.  In support, Nautilus submitted a declaration explaining that Nautilus issued to the AEA an "Educators Employment Liability Insurance Policy," and that under the policy, the AEA is the "insured unit" and not an insurer. (Doc. 1-14 at 2, para. 2).  Nautilus also contends that the Plaintiff's evidence—the Certificate of Insurance—does not create a genuine dispute of material fact as to whether the AEA is an insurer but instead confirms that the AEA is not.

The Plaintiff argues that the Certificate of Insurance (doc. 11-1) "sets forth the notion that the AEA is a necessary and indispensable party to the adjudication of the insurance proceeds to an AEA member, Defendant Moore." (Doc. 14 at 18).  In support, the Plaintiff identifies three roles and responsibilities that the AEA has pursuant to the Certificate of Insurance: (1) the AEA "is the party responsible for providing insurance to its members," (2) the AEA is the "Participating Unit," and (3) the AEA "handles the claims process of 'Insured[s],' or its members." (*Id.* at 20).  According to the Plaintiff, "[t]hese facts clearly indicate that the Plaintiff has a possible cause of action against the AEA" under the garnishment statute. (*Id.*).

The Certificate of Insurance does not support the Plaintiff's argument. Nowhere is the AEA identified as an insurer. Instead, the declarations page lists Nautilus as the insurer[7] and the AEA as the "Participating Unit." (Doc. 11-1 at 2). It also lists "All Unified Members and All Student Members" as the "Insured." (*Id.*). A section titled "CLAIMS PROCEDURE" provides that certain occurrences "should be reported immediately" to the AEA's Associate Executive Secretary. (*Id.*). Additionally, the Certificate of Insurance defines "INSURED" to mean "[a] natural person who, at the time of . . . the alleged incidents, acts, or events which give rise to a claim . . . was a member of the unit named in the declarations page and the National Education Association ("NEA"), and an employee of a school board, board of trustees, or other similar governing body of an educational unit." (*Id.* at 4). The Certificate defines "EDUCATIONAL UNIT" to mean, among other things, "a school district," (*id.* at 3), and it defines "UNIT" to mean "[t]he association named in the declarations page," (*id.* at 5).

The Certificate of Insurance thus establishes that: (1) Nautilus is the insurer, (2) the AEA is a "Participating Unit," (3) the policy provides coverage to AEA members, and (4) certain occurrences should be reported immediately to the AEA. The AEA's designation as a "Participating Unit" simply "makes clear that the AEA's members are covered by the policy." (Doc. 13 at 22). The Plaintiff provides no evidence or legal authority to support its argument that either (a) the AEA's status as a "Participating Unit," or (b) the AEA's role in processing and handling insurance claims, transforms the AEA

---

[7] Specifically, it says the policy is "[i]nsured by: Nautilus Insurance Company." (Doc. 11-1 at 2).

into an insurer or otherwise makes the AEA an indispensable party in the garnishment action.  Moreover, that an association like the AEA undertakes to acquire insurance coverage for its members does not transform the association into an insurer.

The Court finds that the Certificate of Insurance does not create a genuine factual dispute as to whether the AEA is an insurer.  Because the AEA is neither an insurer nor a judgment debtor, there is no reasonable possibility that the Plaintiff has a cause of action against the AEA under Alabama's garnishment statute.  Thus, the Court finds that Nautilus has demonstrated, by clear and convincing evidence, that the AEA was fraudulently joined as a defendant to the garnishment claim in Count 7 of the Plaintiff's Second Amended Complaint.

The Plaintiff also asserts that the fraudulent joinder standard is not satisfied because she has a potential cause of action, separate from the garnishment claim, against the AEA concerning the AEA's involvement in administering insurance proceeds, handling claims, and investigating the Plaintiff's claims against Moore.  The Plaintiff never identifies what this potential cause of action is.  More importantly, there are no allegations in the Second Amended Complaint or evidence regarding the AEA's administration of insurance proceeds, claims handling, or investigation.  The only allegations and evidence concern the AEA's purported status as an insurer and a garnishment claim against the AEA under § 27-23-2—but as explained above, the AEA is not a proper defendant to the garnishment claim.  Thus, because the Plaintiff does not plead any facts regarding the AEA's administration of insurance proceeds, claims handling, or investigation, the "potential" cause of action arising out of the AEA's involvement in these matters does not defeat Nautilus's fraudulent

10

joinder claim. *Cf. Triggs*, 154 F.3d at 1287–88 (reversing the district court's finding of fraudulent joinder because the plaintiff had alleged facts that stated a potential cause of action against the non-diverse defendants). As stated above, the Court finds that Nautilus has met its burden to show that the AEA was fraudulently joined. Accordingly, the Court finds that the AEA is due to be dismissed from this action.

### B.  Realignment of Parties

Nautilus also argues that Moore should be realigned as a plaintiff in the garnishment action. For removal purposes, "the federal law determines who is plaintiff and who is defendant. It is a question of the construction of the federal statute on removal, and not the state statute." *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) (quoting *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 580 (1954)). "[F]ederal courts are required to realign the parties in an action to reflect their interests in the litigation," and the parties "cannot avoid diversity by their designation of the parties." *Id.* (emphasis omitted). The district court must "look beyond the pleadings and arrange the parties according to their sides in the dispute." *Id.* at 1313–14 (citation omitted). "Where the parties' interests are the same," the Eleventh Circuit has "held that those parties must be aligned together . . . , even where the parties' interests were in opposition outside of the issues raised in the subject action." *Id.* at 1314.

*City of Vestavia Hills* concerned party realignment in a § 27-23-2 garnishment action that had been removed to federal court. After the City of Vestavia Hills ("Vestavia Hills") obtained a state-court judgment against the defendant, Vestavia Hills filed a complaint in state court against the defendant and the defendant's insurer pursuant to

11

Alabama Code § 27-23-2. *Id.* at 1312. The insurer removed the action to federal court. *Id.* Diversity jurisdiction was "questionable" because Vestavia Hills and the defendant were both Alabama citizens. *Id.* "In denying Vestavia Hills's motion to remand, however, the district court realigned [the defendant] as a plaintiff because Vestavia Hills's and [the defendant]'s interests converged against [the insurer] in that both Vestavia Hills and [the defendant] want[ed] to force [the insurer] to provide coverage." *Id.* The Eleventh Circuit affirmed, concluding that "the district court did not err in realigning [the defendant] as a plaintiff and in refusing to remand this matter to state court." *Id.* at 1314. This was so "regardless of the fact that the Alabama Code required Vestavia Hills to name [the defendant] as a defendant." *Id.* The court observed that Vestavia Hills's and the defendant's interests were "identical or at least materially so," because there was "no longer . . . any dispute between Vestavia Hills and [the defendant], and the only thing that [the defendant] could want out of this case is for Vestavia Hills to win." *Id.*

*City of Vestavia Hills* is controlling. Here, the Plaintiff's and Moore's interests have converged against Nautilus in that both the Plaintiff and Moore want Nautilus to provide coverage. *See id.* at 1312. There is no longer any dispute between the Plaintiff and Moore, and the only thing that Moore could want out of this garnishment action is for the Plaintiff to win. *See id.* at 1314. Accordingly, the Court finds it appropriate to realign Moore as a plaintiff in the garnishment action.

### C. State Law Claims Against Smith-Tucker

Nautilus urges this Court to sever and remand the state law tort claims against Smith-Tucker pursuant to Federal Rule of Civil Procedure 21. The Court agrees that the claims against Smith-Tucker are due to be remanded, albeit for a different reason.

As explained above, in Counts 1–6 the Plaintiff, an Alabama citizen, asserts state law tort claims against Smith-Tucker, an Alabama citizen. Thus, neither federal question nor diversity jurisdiction exists over these claims. *See* 28 U.S.C. §§ 1331–32. Accordingly, federal jurisdiction exists only if the claims meet the criteria for supplemental jurisdiction set forth in 28 U.S.C. § 1367. A federal court with subject matter jurisdiction over a claim also has "supplemental jurisdiction" over state law claims that are "so related to claims . . . within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). "The state and federal claims must derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). "[I]f, considered without regarding to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then . . . there is power in federal courts to hear the whole." *Id.*

The garnishment action and tort claims do not derive from a common nucleus of operative fact. The factual allegations underlying the Plaintiff's garnishment action against Nautilus, seeking payment of the judgment against Moore for an assault suffered by T.B., are wholly unrelated to the allegations underlying the Plaintiff's state law tort claims against Smith-Tucker for a separate alleged assault suffered by T.B. *See Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 456 (11th Cir. 1996) (per curiam) (affirming the district court's

13

dismissal of a state law claim for lack of jurisdiction in part because the allegations underlying the state law claim were "completely unrelated" to the allegations supporting the federal claims). Additionally, the claims involve different evidence. *See id.* at 455 (explaining that whether the state law and federal claims involve similar evidence is a factor in determining whether the claims are part of the same case or controversy). The garnishment action turns on whether Moore is entitled to coverage under the applicable policy issued by Nautilus. In turn, the coverage issues depend on whether Moore cooperated with Nautilus as required by the policy or alternatively whether Moore's actions against T.B. are subject to a coverage exclusion. The tort claims against Smith-Tucker do not involve issues of insurance coverage; instead, they concern whether Smith-Tucker committed torts against T.B. as the Plaintiff alleges. Thus, the tort claims against Smith-Tucker are not "so related" to the garnishment action against Nautilus that "they form part of the same case or controversy," s*ee* 28 U.S.C. § 1367(a), nor would the Plaintiff ordinarily be expected to try all the claims in one judicial proceeding, *see Gibbs*, 383 U.S. at 725. Accordingly, the Court concludes that it lacks jurisdiction over the state law tort claims against Smith-Tucker, and Nautilus's request to remand these claims to state court is due to be GRANTED.

## V. CONCLUSION

Accordingly, for the reasons stated, and for good cause, it is

ORDERED as follows:

1. Nautilus's motion to realign and sever or dismiss certain claims and parties (doc. 4) is GRANTED;

2. The Plaintiff's motion to remand (doc. 11) is DENIED;

3. The AEA is dismissed as a party in this case;

4. This case is REMANDED IN PART, to the extent that the state law claims against Smith-Tucker in Counts 1–6 of the Second Amended Complaint are REMANDED to the Circuit Court of Macon County, Alabama;

5. Defendant Arnetta Moore is realigned as a plaintiff.

Done this 29th day of September, 2021.

                                          /s/Emily C. Marks
                                    EMILY C. MARKS
                                    CHIEF UNITED STATES DISTRICT JUDGE