IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LATISHA BOLDEN, as mother and next friend of T.B., a minor, *et al.*, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO. 3:20-cv-390-ECM |
| | ) | [WO] |
| NAUTILUS INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

Plaintiff Latisha Bolden, on behalf of her minor son T.B., filed a lawsuit in state court alleging that two of T.B.'s elementary school teachers, Arnetta Moore and Dawn Smith-Tucker, assaulted T.B. at school.  At the time of the alleged assaults, Moore had liability insurance coverage under a policy issued by Defendant Nautilus Insurance Company ("Nautilus").  Bolden eventually obtained a default judgment against Moore after Moore failed to comply with court orders.  Thereafter, Bolden amended her state court complaint to add a garnishment claim against Nautilus pursuant to Alabama Code §§ 27-23-1, -2.  After Nautilus removed the action to this Court, Nautilus filed a counterclaim seeking a declaratory judgment that it does not owe coverage to Moore for the judgment obtained by Bolden due to Moore's alleged failure to cooperate in the litigation.  On September 29, 2021, the Court entered a Memorandum Opinion and Order dismissing a

party who had been fraudulently joined, remanding certain claims to state court, and realigning Arnetta Moore as a Plaintiff. (Doc. 22).

Now pending before the Court is Nautilus' motion for default judgment against Moore (doc. 34) and Nautilus' motion for summary judgment on its counterclaim for declaratory judgment (doc. 32).  Bolden filed a response in opposition to Nautilus' motion for summary judgment; Moore did not respond to either motion, nor has she filed an answer or otherwise appeared in this action.  The motions are ripe for review.  Upon consideration of the briefs, evidence, and applicable law, and for the reasons that follow, Nautilus' motions (docs. 32 & 34) are due to be granted.

## II.  JURISDICTION

The citizenship of the parties is completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Therefore, the Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.  Personal jurisdiction and venue are uncontested.

## III.  LEGAL STANDARD

### A.  Default Judgment

Federal Rule of Civil Procedure 55 governs the procedure for obtaining a default judgment.  When a defendant "has failed to plead or otherwise defend," and the plaintiff demonstrates that failure, the clerk must enter the defendant's default. FED. R. CIV. P. 55(a). After entry of default, the plaintiff "must apply to the court for a default judgment." FED. R. CIV. P. 55(b)(2).

"[W]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam) (alteration in original) (citation omitted).  Thus, "[e]ntry of default judgment is only warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'" *Id.* (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.3d 1200, 1206 (5th Cir. 1975));[1] *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.").  "Conceptually, . . . a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245.

### B.  Summary Judgment

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting FED. R. CIV. P. 56(a)).  "[A] court generally must 'view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016) (citation omitted).  However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018) (citation omitted).  If

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

3

the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); FED. R. CIV. P. 56(c).  The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Hornsby-Culpepper*, 906 F.3d at 1311.  The burden then shifts to the non-moving party "to establish, by going beyond the pleadings, that a genuine issue of material fact exists." *Id.* at 1311–12.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  Non-movants must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A) & (B).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *Fla. Int'l Univ. Bd. of Trs.*, 830 F.3d at 1252. Likewise, the reviewing court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Id.* However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

## IV. FACTS

The facts, stated in the light most favorable to the non-movants, are as follows:

### A. The State Court Action

In 2016, Bolden, on behalf of her minor son T.B., sued Arnetta Moore and Dawn Smith-Tucker, T.B.'s teachers at D.C. Wolfe Elementary School, in the Circuit Court of Macon County, Alabama, Case Number CV-2016-900099 (hereinafter "state court action" or "underlying action"). The complaint alleges that T.B. was assaulted by Smith-Tucker at school on one occasion and by Moore at school on another occasion. Bolden asserts six state law tort claims against Moore and Smith-Tucker: assault; battery; outrage; intentional, wanton, reckless, and/or negligent infliction of emotional distress; negligence; and wantonness. Moore was served with Bolden's complaint via certified mail on February 25, 2017, and Moore filed an answer to the complaint on March 27, 2017. While the case was pending, Moore moved from Alabama to Michigan.

At the time of the alleged assaults, Moore had liability insurance coverage under a policy issued by Nautilus, Policy Number NEA_AL00001_P-4. (Doc. 32-40).[2]   The policy contains the following provisions:

### I. INSURING AGREEMENTS

We agree to provide the Insured, as defined in Part II (H) below, with the coverages shown on the declarations page in return for the payment of the premium, and subject to the limits of liability, exclusions, conditions, and all other terms of this policy.

* * *

### VIII. CONDITIONS

### A. ACTION AGAINST US.

No action shall lie against us, unless as a condition precedent thereto, the Insured shall have fully complied with all terms of this policy. In the event of the Insured's bankruptcy, insolvency, or death, we shall not be relieved of payment under this policy but shall be required to make such settlement as would have been payable but for such bankruptcy, insolvency, or death.

* * *

### D. ASSISTANCE AND COOPERATION.

The Insured shall cooperate with us and upon our request shall attend hearings and trials and shall assist in effecting settlements and obtaining the attendance of witnesses. The Insured shall not, except at the Insured's own cost, voluntarily make any payments, assume any obligation, or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the occurrence.

---

[2] Nautilus issued to the Alabama Education Association ("AEA") an "Educators Employment Liability Insurance Policy," which afforded coverage to the AEA's members.  Because she was a member of the AEA, Moore was an insured under the policy.

(Doc. 32-40 at 2, 11).  After Moore was served, Nautilus agreed to defend Moore against Bolden's claims under a reservation of rights.  Nautilus engaged a law firm to represent Moore.  During the state court litigation, Moore's counsel appeared in court at motion hearings and docket calls.  Moore's counsel also deposed Bolden and T.B.

In June 2017, Moore provided responses to Bolden's interrogatories and requests for production of documents.  Thereafter, what ensued was a year-long—and unsuccessful—effort to take Moore's deposition.  In November 2018, Bolden filed a motion to compel dates for the depositions of Moore and Smith-Tucker.  In its order on the motion to compel, the state court ordered Moore to provide deposition dates to Bolden's counsel.  Thereafter, Bolden's counsel advised that he would not travel to Michigan for Moore's deposition.  Bolden's counsel then noticed Moore's deposition for January 9, 2019, in Alabama.  In response, Moore's counsel advised that Moore was not available to travel to Alabama for a deposition on that day.  On February 6, 2019, the state court ordered Moore to appear in Alabama for her deposition by April 6, 2019.  Counsel for Bolden and Moore agreed to take Moore's deposition in Alabama on March 28, 2019.  The parties later agreed to continue the deposition until May 1, 2019.

On April 30, 2019—the eve of the deposition—Moore's counsel sent a letter to Bolden's counsel advising that Moore was filing a bankruptcy petition and would not appear in Alabama for her deposition on May 1, 2019.  On May 1, 2019, Bolden filed a renewed motion to compel and for sanctions against Moore.  On May 6, 2019, the state court entered an order requiring Moore to sit for a deposition within fifteen days, noting

7

that no Suggestion of Bankruptcy had been filed.   Additionally, the court stated that Moore's "failure to comply with this Order will result in immediate sanctions." (Doc. 32-12).

Upon agreement of counsel, Bolden's counsel re-noticed Moore's deposition for May 21, 2019, in Alabama. (Doc. 32-13).   On the morning of the deposition, Moore's counsel advised that they did not "believe that Arnetta Moore is going to appear for her deposition this morning, because we understand she is filing for bankruptcy protection." (Doc. 32-14).  Moore did not appear for her deposition on May 21, 2019.  Bolden's counsel created an official record of Moore's failure to appear and filed a motion for sanctions.

On May 22, 2019, the state court granted Bolden's motion for sanctions and ordered Bolden to file a bill of costs "for any expenses incurred as a result of the Defendant Moore's failure to appear at the previously Ordered deposition." (Doc. 32-16).  The court also stated that it "intend[ed] to tax said costs against Defendant Arnetta Moore, as sanctions for the Defendant's deliberate and willful contempt of Court." (*Id.*).   Moore filed a motion to reconsider, which the state court denied. (Doc. 32-17).   In its order denying the motion to reconsider, the court stated:

> This issue is not new to the Court.  On multiple occasions, [Moore] has failed or refused to sit for deposition, apparently justifying her absence by stating that she will be filing bankruptcy which will invoke the automatic stay provisions of the Bankruptcy Code.  The Court has not been informed that [Moore] has actually filed bankruptcy and notes for the second time that no Suggestion of Bankruptcy appears of record.
>
> Because this case has not been stayed, the Order directing [Moore] to sit for her deposition was in full force and effect at the time the deposition was

8

scheduled to take place on May 21, 2019.  [Moore's] failure to comply with this Court's order is considered a contempt under the provisions of Rule 37(b) of the Alabama Rules of Civil Procedure.  The Court further notes that careful consideration of a failure to comply with a Court Order does not necessarily require a prolonged consideration, and [Moore's] Motion to Reconsider fails to explain why [Moore's] failure to comply with the Court's Order is not contempt thereof.

Notwithstanding any stipulation between the parties should [Moore] fail to appear for her deposition, and notwithstanding the Plaintiff's request for a hearing on the matter, the Court is of the opinion that the only way to prevent [Moore] from refusing to sit for her deposition in the future is the imposition of immediate sanctions.

(*Id.* at 1–2).

On June 6, 2019, after Bolden submitted a cost bill, the state court imposed a sanction in the amount of $1,516.52, to be taxed as costs against Moore.  Thereafter, Bolden's counsel agreed to reschedule Moore's deposition to June 21, 2019.  On June 20, 2019, Moore filed a Suggestion of Bankruptcy in the state court action.  On June 25, 2019, Moore filed a Motion to Enforce the Automatic Stay, which was granted on July 8, 2019. On September 24, 2019, Bolden filed a motion asking the state court for relief from the stay and to compel Moore's deposition, based on a Bankruptcy Court order lifting the automatic stay with respect to Bolden's pursuit of insurance funds available to Moore.  On September 27, 2019, the state court granted the motion, ordered Moore to sit for a deposition in Alabama within thirty days, and stated that Moore's "failure to comply with the Court's Order will result in immediate sanctions." (Doc. 32-24).

On September 30, 2019, Moore's counsel sent correspondence to Bolden's counsel advising that "Ms. Moore has advised that she cannot afford to travel to Alabama" and that

9

"she fears she will lose her job, which she spent over two years finding, if she takes time off to travel to Alabama to sit for her deposition." (Doc. 32-35).  Moore's counsel proposed that Moore's deposition be taken by video conference from Michigan.  Bolden's counsel rejected that proposal.  On October 2, 2019, Moore's counsel filed a motion for protective order on behalf of Moore, asserting that "appearance at a deposition in Alabama would cause [Moore] undue burden and expense" and seeking to allow her "to attend her deposition via video conference from Detroit." (Doc. 32-27 at 2).  On October 7, 2019, the state court denied the motion for protective order and ordered Moore to sit for her deposition "within the State of Alabama at a mutually agreeable location within the next thirty (30) days." (Doc. 32-28).  The state court specifically "note[d] [Moore's] history of noncompliance" the court's orders and observed that "[a]lthough [Moore] has been ordered on multiple occasions to sit for her deposition, [Moore] continues to defy said orders." (*Id.*).  Moore's counsel indicated to Bolden's counsel that Moore was available for the deposition on November 6, 2019, but stated "we do not know whether Ms. Moore will be financially able to travel to Alabama to attend her deposition." (Doc. 32-29).  Bolden's counsel re-noticed Moore's deposition for November 6, 2019, in Alabama. (Doc. 32-30).  In a November 5, 2019 letter to Bolden's counsel, Moore's counsel advised that Moore was "not financially able to travel to Alabama to attend her deposition tomorrow." (Doc. 32-31).

On November 6, 2019, Bolden filed a motion for sanctions and motion for default judgment against Moore.  The state court granted the motion for sanctions, finding that

Moore "has failed to participate in good faith in the discovery process in this matter and has repeatedly failed to comply with multiple Orders of the Court directing her to sit for her deposition in this matter" and finding Moore "in contempt of court." (Doc. 32-33). The court also entered a default judgment against Moore and provided that the matter "shall be set for a damages hearing on motion of any party." (*Id.*).

On November 15, 2019, counsel for Nautilus suggested to Moore's counsel that efforts be made to schedule Moore's deposition on a Saturday so she would not have to miss work. Counsel for Nautilus also advised that Nautilus would pay for Moore's travel from Michigan to Alabama for the deposition. Moore's counsel sent a letter to Moore dated that same day advising that Nautilus had agreed "to pay for [her] travel expenses and costs to appear in Alabama for [her] deposition." (Doc. 32-35). The letter also indicated that Moore's counsel would attempt to "schedule [the deposition] around [her] work schedule, such that [she] will not have to miss any time from work, including, perhaps, scheduling [her] deposition for a Saturday." (*Id.*). Moore did not respond to the November 15, 2019 letter.

On December 4, 2019, counsel for Nautilus sent a letter directly to Moore, stating that her "refusal to sit for deposition in Alabama is a breach of [her] cooperation obligation under the Policy, and Nautilus is substantially prejudiced by such breach, as it will deny Nautilus the right and ability to defend [her] and will cause the entry of a default judgment against [her]." (Doc. 32-36 at 2). The letter also informed Moore that Nautilus would deny coverage based on the prejudice caused by Moore's noncooperation, that it would withdraw

from Moore's defense effective December 14, 2019, and that it "will not pay or indemnify [her] for any judgment rendered against [her] in this matter, whether by default or otherwise, as [her] failure to cooperate in the defense . . . is a forfeiture of any coverage which may otherwise have attached under the Nautilus Policy." (*Id.* at 2–3). Moore did not respond to the December 4, 2019 letter. On December 15, 2019, Moore's counsel filed a motion to withdraw.

On March 13, 2020, the state court entered an Order of Default Judgment Awarding Damages against Moore and in favor of Bolden. (Doc. 32-38). The court explained that Moore "ha[d] repeatedly failed and refused to appear for deposition testimony in direct contempt of multiple Orders of this Court, leaving the Court with no recourse other than to enter a default judgment against her." (*Id.* at 1). The state court awarded Bolden a $2 million judgment against Moore, representing $1.5 million in compensatory damages and $500,000 in punitive damages. (*Id.* at 2–3).

On May 5, 2020, Bolden filed a Second Amended Complaint purporting to add a garnishment claim pursuant to Alabama Code §§ 27-23-1, -2, against Nautilus and the AEA. (Doc. 1-3). Nautilus was served with the Second Amended Complaint on May 11, 2020.

**B. Procedural History of the Federal Lawsuit**

On June 10, 2020, Nautilus filed its Notice of Removal in this Court, asserting diversity jurisdiction. Nautilus acknowledged that the AEA is not completely diverse from

Bolden.  However, Nautilus asserted that this Court should disregard the AEA's citizenship

because the AEA was fraudulently joined.

On June 17, 2020, Nautilus filed an answer and counterclaim against Bolden and

Moore.[3]  In its counterclaim, Nautilus seeks a declaratory judgment that it does not owe

coverage to Moore for the judgment obtained by Bolden because Moore failed to cooperate

in the state court action.  The counterclaim contains language from the Nautilus policy,

including the "Insuring Agreements," "Action Against Us," and "Assistance and

Cooperation" sections set forth above.  The counterclaim alleges that the state court ordered

Moore to appear in Alabama for her deposition on four occasions, that Moore never

appeared in Alabama for her deposition, and that the state court held Moore in contempt

and sanctioned her for her failure to attend a deposition in Alabama.  The counterclaim

also alleges that Nautilus offered to pay Moore's travel expenses and costs to appear in

Alabama for her deposition and that Nautilus would make efforts to schedule the deposition

for a Saturday so Moore would not have to miss work, but that Moore did not respond to

this offer.  The counterclaim alleges that Moore's repeated failure to appear in Alabama

for a deposition, despite numerous court orders requiring her to do so, constitutes a

---

[3] When Nautilus filed this pleading, Nautilus and Moore were both defendants; the Court did not realign Moore as a plaintiff until over a year later.  Thus, it appears to the Court that Nautilus' pleading as asserted against Moore was actually a crossclaim, not a counterclaim, at its inception. *See* FED. R. CIV. P. 13(a)–(b), (g) (noting that a counterclaim is brought against an opposing party while a crossclaim is brought against a coparty).  No party has argued that this apparent mislabeling of Nautilus' pleading impacts this Court's resolution of the pending motions, and the Court perceives no reason why it would. *See* 6 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1407 (3d ed., Apr. 2022 Update) ("Although there is no specific rule . . . dictating what should be done when [a crossclaim is improperly referred to as a counterclaim], courts generally have ignored the nomenclature used by the pleader and have treated the claim as if it had been properly labeled . . . .").

violation of the Policy's "Assistance and Cooperation" clause, which Nautilus contends is a condition precedent to coverage. The counterclaim further alleges that because Moore violated the "Assistance and Cooperation" clause, Nautilus has no "duty to defend or indemnify Moore with respect to the judgment in the underlying action." (Doc. 2 at 17). Moore was served with Nautilus' answer and counterclaim via U.S. mail on June 17, 2020.

On June 18, 2020, Nautilus filed a motion to realign and sever or dismiss certain claims and parties. (Doc. 4). On September 29, 2021, the Court entered a Memorandum Opinion and Order granting Nautilus' motion, dismissing the AEA as party because it was fraudulently joined, remanding the state law claims against Smith-Tucker to state court, and realigning Arnetta Moore as a Plaintiff. (Doc. 22).

Nautilus filed an application to the Clerk for entry of default against Moore, which was accompanied by an affidavit. (Doc. 30). The Clerk entered default against Moore on April 27, 2022. (Doc. 31).

## V. DISCUSSION

"Federal courts sitting in diversity apply the substantive law of the state in which the case arose." *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132 (11th Cir. 2010) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The parties agree that Alabama law governs this dispute. Under Alabama law, "[w]hat constitutes a failure of cooperation by the insured is usually a question of fact," and Nautilus bears the burden of proof to establish noncooperation. *Ex parte Clarke*, 728 So. 2d 135, 141 (Ala. 1998) (citation omitted); *Auto-Owners Ins. Co. v. Premiere Restoration & Remodeling, Inc.*, 2014 WL

14

7369391, at *6 (N.D. Ala. Dec. 29, 2014).  Moreover, to relieve the insurer of its duty to defend and indemnify, the insured's failure to cooperate must be "material and substantial." *Williams v. Ala. Farm Bureau Mut. Cas. Ins. Co.*, 416 So. 2d 744, 746 (Ala. 1982).  "The 'test for determining what is material and substantial with respect to an insured's alleged failure to cooperate' amounts to a 'requirement of prejudice to the insurer.'" *Id.* (citation omitted).  The Alabama Supreme Court upheld a finding of substantial and material noncooperation where, after an insured failed to respond to multiple communications from the attorney hired by her insurer, the attorney withdrew from representation, and thereafter a *nil dicit*[4] judgment was entered and money damages were assessed against the insured. *See Clifton v. Cruse*, 174 So. 2d 321, 322–25 (Ala. 1965).  Additionally, a federal district court, applying Alabama law, found noncooperation and prejudice to the insurer where the insured failed to respond to written discovery in the underlying state court action and this failure resulted in the entry of a default judgment against the insured. *See Premiere Restoration*, 2014 WL 7369391, at *6.

The Court will first address Nautilus' motion for summary judgment.  Nautilus has produced the following evidence regarding Moore's noncooperation: (1) Nautilus' policy imposed upon Moore a duty to cooperate; (2) Moore's counsel made multiple efforts over a year-long period to secure Moore's attendance at a deposition, including exchanging numerous communications with Bolden's counsel, requesting that the deposition take place

---

[4] Short for "*nil-dicit* default judgment," a *nil dicit* is a "judgment for the plaintiff entered after the defendant fails to file a timely answer." *Nil-dicit default judgment*, BLACK'S LAW DICTIONARY (11th ed. 2019).  *Nil dicit* is Latin for "he says nothing." *Id.*

in Michigan and moving for a protective order to that effect when Bolden did not agree, and rescheduling the deposition by agreement; (3) Moore never sat for a deposition in Alabama, despite four court orders requiring Moore to do so; (4) Nautilus offered to pay for Moore to travel to Alabama for the deposition and to try to schedule it for a Saturday to accommodate Moore's work schedule; and (5) Moore did not respond to Nautilus' offer. Bolden does not dispute the preceding facts or that the Nautilus policy imposes on Moore a duty to cooperate.  Nonetheless, Bolden contends that there is "substantial evidence" that Moore cooperated with her counsel and that, consequently, there is a genuine dispute of material fact regarding Moore's cooperation. (Doc. 37 at 10).  Viewing the evidence in the light most favorable to the non-movants, in June 2017 Moore answered written discovery propounded by Bolden, and Moore communicated with her counsel regarding the attempts to schedule her deposition, resulting in her counsel exchanging communications with Bolden's counsel and filing motions in state court regarding the deposition.  However, it remains undisputed that Moore failed to sit for a deposition in Alabama despite four court orders requiring her to do so, and Moore did not accept or even respond to Nautilus' offer to pay her travel expenses and costs and to try to schedule the deposition around her work schedule.  In this case, the fact that Moore or her counsel participated in certain aspects of the state court litigation is insufficient to create a genuine dispute of material fact as to whether Moore failed to cooperate with respect to her deposition, a key component of the litigation which led to the entry of the default judgment.  Although the issue of noncooperation is "usually a question of fact," *Ex parte Clarke*, 728 So. 2d at 141, on this

record Bolden has failed to demonstrate that a genuine dispute of material fact exists regarding Moore's noncooperation.

Bolden also resists summary judgment on the grounds that a reasonable jury could infer either that Moore's alleged noncooperation was the result of her following the advice of counsel or that Nautilus did not undertake a good faith effort to secure her cooperation. However, Bolden cites no evidence in support of her argument.   Without supporting evidence, Bolden's contentions amount to nothing more than speculation and thus fail to create a genuine dispute of material fact as to Moore's noncooperation. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586 (explaining that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

Bolden additionally argues that Nautilus has not produced evidence that it was prejudiced, asserting that noncooperation alone does not constitute prejudice and citing *Auto-Owners Insurance Co. v. Wier-Wright Enterprises, Inc.*, 2017 WL 1019535 (N.D. Ala. March 16, 2017), in support of her argument.   Here, however, the Court is not faced with noncooperation alone: the Court has evidence of noncooperation plus a significant default judgment imposed due to that noncooperation.   Specifically, Nautilus has produced evidence that Moore disobeyed four court orders to sit for a deposition in Alabama and failed to respond to her counsel's attempts to set the deposition under circumstances agreeable to her.   Nautilus has also produced evidence that as a result of Moore's disobedience and failure to communicate with counsel, the state court entered a default judgment against her and in favor of Bolden in the amount of $2 million.   Under the

circumstances of this case, Moore's failure to sit for a deposition in Alabama, which resulted in a large monetary default judgment against her, is evidence that Nautilus was prejudiced. *See Premiere Restoration*, 2014 WL 7369391, at *6;[5] *Clifton*, 174 So. 2d at 322–25.  Bolden appears to argue that because Moore was represented by counsel who, on Moore's behalf, filed motions and other papers, appeared in court, and deposed Bolden and her son, Nautilus cannot show prejudice or that there is at least a genuine dispute of material fact.  But Bolden fails to articulate how Moore's counsel's actions with respect to other aspects of the litigation create a genuine dispute of material fact as to whether the entry of a $2 million default judgment prejudiced Nautilus.  Moreover, although the *Wier-Wright* court concluded that an insured's undisputed failure to cooperate did not prejudice the insurer, the court also observed that no default judgment had been entered against the insured in the underlying state court action, nor had sanctions been issued against the insured for failure to provide discovery. *Wier-Wright*, 2017 WL 1019535, at *20.  The court further opined that the entry of a default judgment could constitute prejudice and a determination that no coverage was owed. *Id.*

Bolden also argues that Nautilus cannot show prejudice because it has not disputed the substance of Bolden's claims in the state court action.  But the substance of Bolden's state court claims does not impact the Court's analysis as to whether Nautilus was

---

[5] While the Court recognizes that *Premiere Restoration* is nonbinding, the Court finds its analysis persuasive.

prejudiced.  Here, prejudice does not turn on the substance of Bolden's claims but rather the entry of a significant default judgment due to Moore's failure to cooperate.

Finally, Bolden argues that ruling in Nautilus' favor would put Nautilus in a better position than if Moore had passed away while the state court lawsuit was pending.  Bolden asserts that a deceased party by definition cannot cooperate in a lawsuit but that both federal law and Alabama law allow a deceased party's representative to be substituted as a party, thereby allowing the lawsuit to continue.  Bolden's argument misses the mark.  Here, the noncooperation evinced by Moore's conduct does not turn on Moore's physical presence in the litigation, as opposed to a representative's, but instead turns on Moore's refusal to abide by court orders and her refusal to respond her counsel's efforts to schedule her deposition.  Similarly, the prejudice flowing from Moore's failure to sit for a deposition is not Moore's physical absence from the litigation but instead is that her failure to sit for a deposition led the state court to enter a default judgment against her.[6]

The Court concludes that Bolden has failed to produce evidence sufficient to create a genuine dispute of material fact as to whether Moore's failure to cooperate prejudiced Nautilus.  Accordingly, because there is no genuine dispute of material fact that Moore failed to cooperate with Nautilus and that her noncooperation prejudiced Nautilus, Nautilus

---

[6] Moreover, while a deceased party by definition may not be able to cooperate in a lawsuit because she is deceased, a representative substituted in her place is not so hindered.  And if Moore had passed away and a representative was substituted in her place, and there was evidence that the representative engaged in the conduct that Moore herself engaged in here, all else being equal the outcome would likely be the same: Nautilus would be prejudiced by the representative's failure to cooperate which led to the entry of a default judgment.

is entitled to summary judgment on its counterclaim for declaratory judgment that it owes no duty to defend or indemnify Moore against the state court judgment. *See Premiere Restoration*, 2014 WL 7369391, at \*6–7 (granting summary judgment in favor of insurer on its request for declaratory judgment after finding noncooperation and prejudice).[7]

The Court now will address Nautilus' motion for default judgment against Moore. Nautilus' counterclaim alleges that the state court ordered Moore to appear in Alabama for her deposition on four occasions, that Moore never appeared in Alabama for her deposition, and that the state court held Moore in contempt and sanctioned her for her failure to attend a deposition in Alabama.   The counterclaim also alleges that Nautilus offered to pay Moore's travel expenses and costs to appear in Alabama for her deposition and that Nautilus would make efforts to schedule the deposition for a Saturday so Moore would not have to miss work, but that Moore did not respond to this offer.   The counterclaim also contains language from the Nautilus policy, including the "Insuring Agreements," "Action Against Us," and "Assistance and Cooperation" sections set forth above.   The Court finds these allegations sufficient to demonstrate that Moore failed to cooperate with Nautilus in contravention of the applicable insurance policy and that Moore's noncooperation prejudiced Nautilus. *See Premiere Restoration*, 2014 WL 7369391, at \*6.   The Clerk entered default against Moore on April 27, 2022. (Doc. 31).   Accordingly, Nautilus is

---

[7] In her response in opposition, Bolden moved to continue the disposition of Nautilus' motion for summary judgment pursuant to Rule 56(d) so that Bolden can obtain additional information in discovery.  The Court denied that motion by separate order entered on June 15, 2022. (Doc. 43).

entitled to a default judgment against Moore on its request for declaratory judgment that it owes no duty to defend or indemnify Moore against the state court judgment.

## VI.  CONCLUSION

For the reasons stated, and for good cause, it is hereby

ORDERED as follows:

1.      Nautilus' motion for default judgment (doc. 34) and motion for summary judgment (doc. 32) are GRANTED;

2.      Arnetta Moore is not entitled to coverage for the default judgment entered against her in state court under the insurance policy issued by Nautilus (Policy Number NEA_AL00001_P-4).

Bolden's garnishment claim against Nautilus remains pending.  Accordingly, this matter will be set for a status conference by separate order.

Done this 11th day of July, 2022.

_____/s/Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE